UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| Jack Gindi ) | Chapter 11 |
| ) | Case No. 09-24436 MER |
| ) | |

| | |
|---|---|
| Andreas Chizzali, ) | |
|     Movant ) | |
| v. ) | |
| Jack Gindi, ) | |
|     Respondent ) | |

_____

**RESPONSE TO MOTION FOR RELIEF
FROM AUTOMATIC STAY
& REQUEST FOR HEARING**
_____

Jack Gindi, Debtor in Possession, by and through his undersigned counsel, responds to the Motion of Andreas Chizzali ("Chizzali") for Relief from the Automatic Stay as follows:

## I.   Introduction

Chizzali is a judgment creditor in this case. He requests relief from the Automatic Stay in this case to pursue two matters on appeal. The first appeals the refusal of the Boulder Count District Court to hold the debtor, Jack Gindi, in contempt in a civil proceeding. Chizzali claims the contempt at issue is not stayed because it is criminal in nature. As noted below, the contempt was civil, but if it was criminal, the right to proceed would belong to the Court seeking vindication, not a party such as Chizzali. In the instant case there is no such proceeding pending.

The second matter appeals the Boulder County District Court finding on a writ of garnishment that Bank of the West properly set off monies in its account against its own debt rather than applying it to Chizzali's judgment. If this ruling were reversed, Chizzali goes too far in claiming he would have a right to the funds after a bankruptcy filing. If the Bank did not properly exercise ownership, then the funds are property of the estate. If relief is granted to pursue the appeal, it should be carefully worded not to extend to allow Chizzali to take possession of the estate's property.

**II. Background Information**

1.  This Chapter 11 proceeding was filed on July 20, 2009.

2.  Debtor is the judgment debtor in Civil Action No. 07 CV 685, District Court for the County of Boulder, State of Colorado (the "Civil Action"), on appeal by the Debtor as Case No. 2008CA0961.

3.  Plaintiff, Andreaz Chizzali, has also filed an appeal as Case No. 2008CA1782. Thus, this is not a "cross appeal" of the same matters at issue in the debtor's appeal, and is not necessary to the review of Debtor's case. It involves post-judgment collection matters.

4.  Andreas Chizzali has filed this Motion for Relief from Stay asking to be allowed to move forward in Case No. 2008CA1782.

5.  The Court of Appeals has issued a stay in 2008 CA 1782.

6.  During the pendency of the Civil Action, Chizzali filed a Motion for Contempt. Although he now characterizes it as "seeking criminal contempt sanctions," the documents speak for themselves as to the nature of the motion. The debtor believes the contempt was civil in nature. This matter is addressed more fully below.

7.  During the collection phase of the Civil Action, Chizzali served a Writ of Garnishment and Pending Levy on Bank of the West. Bank of the West set-off a debt owing to that entity and traversed the garnishment. Before it filed the traverse, Chizzali received a clerk's default, which was set aside by the judge. Bank of the West was awarded the funds. Chizzali appeals the Order setting aside the default, and seeks access to the garnished funds.

### III. Response to Contempt Issues

#### A. The Automatic Stay Applies

8.  11 USC §362(a) provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of--
    (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, **or other action or proceeding against the debtor…**
    (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title…

2

9.     Chizzali begins his argument by stating that he does not need relief from stay to pursue "criminal contempt" matters against the debtor, and that is how he characterizes his appeal.  He cites 11 USC §362(b) which says that the filing of a petition does not operate as a stay "under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor."

10.    He then cites two cases where court contempt orders for imprisonment outstanding on the date of filing, were found not to violate the automatic stay. In the cases cited by Chizzali, there were extant court orders of contempt at issue. *In re Kearns,* 168 B.R. 423 (D. Kan. 1994) involved a post-bankruptcy filing attempt by a spouse collecting non-dischargeable domestic support obligation to enforce a pre-filing court order directing the debtor to appear and serve jail time. Similarly, in *NLRB v. Sawulski,* 158 B.R. 971, 973 ( E.D. Mich. 1993), an order had entered pre-filing directing the United States Marshal to arrest the debtor. Both cases rested their conclusion that the automatic stay did not prevent the implementation of contempt orders and proceedings by the court, on the criminal nature of the ongoing proceeding in contempt.

11.    The posture here is quite different —there is no court here trying to vindicate its dignity. Quite the contrary, Chizalli is trying to pursue an appeal of the *denial* of a request to enter a contempt order.

12.    The question for this court is whether such an effort is "the continuation of a criminal action."  It is not.  A "proceeding" in criminal contempt is initiated (albeit on the motion of a litigant), by a court when the court signs and issues a Contempt Citation. The "proceeding" is complete when the Court (as it did in this case more than a year ago), found that its Order was a "judgment not enforceable through a contempt motion." *See Movant's Exhibit 3*.  What Chizzali appeals is the court's refusal to proceed with contempt. This is not a "criminal action."

13.    Interpreting the statute and the cases in the manner suggested by Chizzali would mean that disgruntled and aggressive creditors, whose actions are stayed by a bankruptcy filing, may, at will, continue to harass debtors throughout the bankruptcy process by filing motions in State Court claiming to be "contempt motions[1]."  The floodgates would never be closed.

---

[1] This is particularly repugnant where, as here, the allegedly "contemptuous" behavior is failure to pay a debt—a characteristic of each and every person seeking relief under the bankruptcy system.

3

14. Chizzali has cited no case on point—where a creditor was allowed to proceed to appeal a denial of a contempt motion. While the debtor is in Chapter 11 he needs to be concentrating on a plan of reorganization to benefit all creditors, not incurring attorney fees addressing one creditor's failed attempts to coerce payment.

15. The appeal is nothing more than the continued use of judicial process against the debtor and his property in post-judgment collection attempts, which puts is squarely within the prohibition of Section 362 .

B. **Civil Versus Criminal Contempt**

16. On January 10, 2008, the Boulder County District Court Judge, interpreting a settlement the parties entered into, ordered Jack Gindi to make payment by a date certain. When the payment was not made, Chizzali filed a Motion for Contempt. The Court immediately realized the mistake and replaced the January 10, 2008 Order with a Judgment dated March 21, 2008. *See Movant's Exhibit 2.* In addressing the contempt motion, the Judge found *"the March 21, 2008 Order is a judgment that is not enforceable through a contempt motion." See Movant's Exhibit 3.* Chizzali filed a Motion for Reconsideration which was summarily denied.

17. Chizzali appears to concede that if the contempt was civil in nature that he is not entitled to relief. The Tenth Circuit has articulated the distinction between criminal and civil contempt—the bright line test being **whether the Order** is for the benefit of a creditor and the punitive component of the sanction is within the debtor's control:

> Whether a contempt is civil or criminal turns on the character and purpose of the sanction involved. Thus, a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. *International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821 827-28, 129 L. Ed. 2d 642, 114 S. Ct. 2552 (1994) (internal quotations and citations omitted).* In civil contempt, "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Id. at 828 (internal quotations and citations omitted).* On the other hand, "a completed act of disobedience that the contemnor cannot avoid" is criminal in nature. *Id. (internal quotations and citations omitted).*

4

*Lucre Mgmt. Group, LLC v. Schempp Real Estate, LLC (In re Lucre Mgmt. Group, LLC),* 365 F.3d 874, 876 (10th Cir. Colo. 2004).

18.     Again, no order issued here except an order refusing to order contempt, so it is premature to state that, if the Court order denying contempt were reversed, that a sanction to be entered would be criminal in nature.

19.     The motive of the judgment creditor is to collect on his judgment. He complains in his Motion for Contempt that his judgment is unpaid.[2] What he wants is an order of contempt directing payment to Chizzali—this is remedial (civil) in nature.

20.     This bankruptcy was filed precisely to stop the "rush to the courthouse" of the debtor's numerous creditors to obtain such payment.

### IV.     The Court Should Not Grant Relief from Stay Regarding the Writ of Garnishment

21.     Chizzali issued a writ of garnishment in May of 2008 and served it on the Bank of the West.[3] Bank of the West seized the funds and traversed, but only after a clerk's default had issued. The Court set aside the clerk's default[4] and held for the Bank of the West. Chizzali appealed the setting aside of the clerk's default.

22.     Chizzali's only claim to the funds derives from his judgment against the debtor in this case. Collection by one judgment creditor to the detriment of other unsecured creditors is precisely what the automatic stay is meant to stop.

23.     Chizzali states that allowing the appeal to proceed "has absolutely no impact on the Debtor." Not so.  He begins his argument by stating "Service of the Writ of Garnishment upon the Bank created a lien upon the funds that the debtor held at the Bank..."  He then states unequivocally, "Liens generally pass through bankruptcy unaffected."  It is not that simple. Assuming, arguendo, a lien was created (not so--addressed below) secured creditors in Chapter 11 are to be

---

[2] Though how the judgment could be collectible at this time is not explained. A final, appealable judgment did not enter until July 11, 2008 after Remand from the Court of Appeals. *See Movant's Exhibit 1.* An earlier judgment rendered in the same case could not have been final absent a 54(b) certification. *See C.R.C.P. 59.*

[3] How the Writ of Garnishment could have issued in May of 08 when the judgment was not final until July 11, 2008 is again unexplained.

[4] The Garnishment procedures, like the Rules of Civil Procedure, provide that a clerk's default still requires a hearing on the merits. S*ee C.R.C.P. 103(7).*

5

identified and dealt with through a plan. Having a "lien" does not provide "cause" for relief from stay in and of itself, nor does it allow a creditor to take control of property against which a lien is claimed.

24.     The better analysis starts with the question of whether the garnished funds are property of the estate. The Court in *In re Seay,* 97 B.R. 41, 44 (Bankr. D. Colo. 1989) determined that the debtor had an interest in garnished funds until the matter of ownership had been *finally* "determined[5]." In this case, because of the pending appeal, no "final" determination has been made. Thus, the funds, particularly if they are to be returned from Bank of the West, belong to the debtor and are subject to turnover. Any rights of Chizzali are derivative of the debtor's rights.

25.     The Colorado Supreme Court decided, en banc, in *Nolan v. District Court, Second Judicial Dist.,* 195 Colo. 6, 575 P.2d 9 (1978), that until the period of time for claiming exemptions has expired, and concurrently the time for intervention by third parties has expired, "the garnishment proceeding was not 'determined'." The exemption procedure is, by statutory command, an integral part of any garnishment proceeding. **A garnishment proceeding may not be considered "determined" until decisions regarding the rights of parties to the action can be made, and nothing but ministerial functions remain to be done.**

26.     One can ask here, "What would happen if Chizzali won the appeal?" Since a clerk's default requires a hearing on the merits, if it were re-entered against Bank of the West, the matter would be remanded for further hearings. Neither the determination of an appeal, nor the further proceedings are "ministerial."

27.     What is, or is not, property of the Debtor's estate is generally controlled by 11 U.S.C. § 541. It includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The definition of what is, and what is intended to be, property of the estate is broad and encompassing. "The specific meaning of the reference in § 541(a)(1) to 'all legal or equitable interests of the debtor in property' is also easily discerned. Even on its face, § 541(a)(1) is all-encompassing, and Congress meant for it to be construed commensurately." *In re Kaiser Steel Corp.*, 80 B.R. 216, 220 (Bankr. D.Colo. 1987); *(citing, In re Mortgageamerica Corp.*, 714 F.2d 1266, 1274-75 (5th Cir. 1983).

28.     While a determination of what actually constitutes property of the estate is ultimately a federal question, bankruptcy courts will, when necessary, look to state law for assistance in deciding the issue. *In re Loughnane*, 28 B.R. 940, 942

---

[5] Even then, the Court notes, the seizure is subject to being undone as a preference.

(D.Colo. 1983). Section 541(a) (11 U.S.C. § 541(a)) has been characterized as defining what interests of a debtor may become property of the estate while state law or other nonbankruptcy law defines the scope and existence of that interest.

29. Significantly, "property of the estate . . . . is intended to include any property made available to the estate by other provisions of the Bankruptcy Code." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S. Ct. 2309, 2313 n.9, 76 L. Ed. 2d 515 (1983). Several of these Code provisions bring into the estate property held or controlled by others, including creditors, and property in which the debtor did not have a possessory interest when the bankruptcy proceedings commenced. *Id*. at 103 S. Ct. 2313-2314. In *Whiting Pools*, supra, the Internal Revenue Service had levied on and seized personal property of the debtor in order to satisfy its tax lien, prior to debtor's Chapter 11 petition being filed. After the debtor filed Chapter 11, the United States Supreme Court approved Debtor's recovery of the seized assets by way of a turnover order pursuant to 11 U.S.C. § 542(a). The United States Supreme Court concluded in *Whiting Pools* that the Debtor estate, or "reorganization estate," also includes "property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization." *Id.* at 103 S. Ct. 2315. *Accord, In re Carlsen,* 63 B.R. 706 (Bankr. C.D.Ca. 1986).

30. The key element in *Whiting Pools,* which is controlling, indeed decisive, of the issues in this case is the court's ruling that only when ownership of property seized by a creditor is transferred from the debtor is it then not an asset of the estate and not recoverable as an asset of the estate. [Tax lien, levy, or seizure] provisions do not transfer ownership of the property to the IRS.

31. The Service's interest in seized property in *Whiting Pools* was its lien on that property. The Internal Revenue Code's levy and seizure provisions, . . . . are special procedural devices available to the IRS to protect and satisfy its liens . . . . and are analogous to the remedies available to private secured creditors. They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody. *Whiting Pools,* supra at 103 S. Ct. 2316.Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale. Until such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542(a).*Id.* at 103 S. Ct. 2317.

32. The question thus arises in the instant case, did the Debtor's ownership rights to the garnisheed funds terminate -- or become irrevocably severed -- so that the funds were not and could not become an asset of the estate?

7

33.     Garnishment rights and proceedings in Colorado are governed, generally, by statute, C.R.S. § 13-54.5-101, *et seq.*, and rules prescribed by the Colorado Supreme Court, C.R.C.P. 103. See, C.R.S. § 13-54.5-109; C.R.C.P. 103[6].

34.     C.R.S. 13-54.5-102 provides that a continuing garnishment creates a "continuing lien" on earnings to the extent they are not exempt.

35.     The instant case does not involve wages.

36.     Nor does Chizzali cite any legal authority for the proposition that service of a writ creates a lien.

37.     Rather, the instant Writ is a Writ of Garnishment with Notice of Exemption and ***Pending*** Levy (emphasis added). Just as in *Whiting Pools*, a levy doesn't do it. Unlike *Whiting Pools*, Chizzali did not have an underlying lien to rely on (the Bank of the West, on the other hand, did have a security agreement).

38.     If the Court decides to grant relief to Chizzali to continue the appeal, it is respectfully requested that the relief be limited to allowing the Court of Appeals to issue its ruling as to whether the Bank of the West had properly seized, but to continue the stay as to execution on the garnished funds by Chizzali, based on the legal analysis above. The funds should be delivered to the debtor in possession; or, in the alternative, placed in the registry of this court. The determination and treatment of lien rights, if any, of Chizzali are more properly the subject matter of proper bankruptcy proceedings. *See 11 U.S.C. §157*.

WHEREAS, it is requested that the Court deny the Motion for Relief from Stay.

---

[6] Prior to entry of the garnishment judgment, any objections or claims of exemption to the garnisheed property may be asserted by the debtor and they must be heard and determined by the court. C.R.C.P. 103(6). So too, any other persons who claim an interest in the garnisheed funds may intervene and assert their claims and rights prior to the entry of the garnishment judgment. 103(8). And a garnishee may "claim as set-off and retain or deduct all demands or claims on the part of the garnishee against any party to the garnishment proceedings… 103(10). After a hearing on objections, claims of exemption, or intervenor's claims, the court is to enter its "order or judgment" respecting any such objections, claims of exemption, intervenor's rights, and the disposition of garnisheed funds. Such garnishment order or judgment after the exemption hearing is "a final judgment for the purposes of appellate review." C.R.C.P. 103(6)(c)(4).

Dated this 19th day of August, 2009.

        Respectfully submitted,

        \s\Cynthia T. Kennedy
        Cynthia T. Kennedy, #11668
        308 ½ E. Simpson Street
        Lafayette, CO 80026
        (303) 604-1600
        ctk@kandkatlaw.com

        Attorney for the Debtor in Possession

<u>Certificate of Service</u>

I hereby certify that service of the foregoing document was served by depositing same in the United States mail, first class postage prepaid, on the 19th day of August, 2009 to the following:

Alison Goldenberg, Esq.
U.S. Trustee
999 18th Street, Ste 1551
Denver, CO 80202

Craig A. Weinberg, Esq.
Stevens, Littman, et al.
250 Arapahoe, Ste. 301
Boulder, CO 80302

Bank of the West
c/o D. Miller
633 17th Street, Ste. 2000
Denver, CO 80202

Gregory Williams, Esq.
Block, Markus & Williams
1700 Lincoln Street, Ste 4000
Denver, CO 80202

/s/Cynthia T. Kennedy